## 837.  BARNES v. THE STATE.

1. The evidence authorized the verdict, and no error is assigned which warrants the reversal of the judgment refusing a new trial.
2. The fact of indebtedness, as against one accused of a violation of the labor-contract act of 1903 (Acts 1903, p. 90), is of itself wholly insufficient to authorize conviction; it is merely persuasive evidence of intent to defraud, when considered in connection with evidence of failure on the part of the defendant to perform his contract or repay the money advanced. But, by the terms of that statute, the law raises, from proof of certain facts, the presumption of an intent to defraud, and the burden is thus cast upon the defendant to rebut and remove this presumption.
3. For the repayment of money advanced on a contract of labor to be effectual as a defense, the advancement must be repaid on or before the first day of the term of the service of labor contracted for, if the defendant does not enter upon his term of service.
4. Statements of a defendant in his own behalf, made anterior to the trial, are not admissible as evidence in his favor.

Accusation of cheating and swindling, from city court of Sparta —Judge Little. November 5, 1907.

Submitted December 10,—Decided December 20, 1907.

*J. W. Lewis,* for plaintiff in error.

*R. W. Moore, solicitor,* contra.

RUSSELL, J.  The defendant was convicted of the offense of misdemeanor, and he excepts to the overruling of his motion for new trial. The accusation was based upon an alleged violation of the act of 1903. It is alleged, that the defendant, after having contracted with one Peden, to perform services as a farm-hand from September 24, 1906, to December 25, 1906, for $10 per month, on the faith of said contract procured from said Peden the sum of $1, with intent not to perform such service. It is further alleged, that Peden was damaged in the sum of $1, because the defendant neither performed the service contracted for nor returned the money advanced, and that the defendant had no good and sufficient cause for not so doing. The motion for new trial was based upon general grounds; there being no exceptions to the charge of the court or to the admission of evidence. The only question, then, is whether the evidence authorized the finding of the verdict of guilty. The testimony of Mr. Peden shows, that there was a definite contract between himself and the defendant, beginning September 24, 1906, and ending December 25, 1906,

and shows the price to be paid for the labor; that the money was procured on the contract, and that there was a failure to perform the service contracted for or return the money, and that he lost and was damaged to that extent.

As we have heretofore held, in *Patterson* v. *State,* 1 *Ga. App.* 784 (58 S. E. 284), the intention, which is an essential element of crime, may either be proved or inferred or presumed. By the very terms of the second section of the act of 1893, the proof on the part of the State in this case raised the presumption that the money was procured with the intent to defraud. The State's case was complete and the verdict of guilty was authorized, unless the defendant either showed that he had made no contract, had procured no money, or had a good and sufficient cause for not performing the labor or returning the money at the time the labor was to be performed. *Harwell* v. *State,* 2 *Ga. App.* 613 (58 S. E. 1111). As held in *Patterson* v. *State,* supra, the act of 1903 was not intended to enforce a collection of debts on involuntary or oppressive labor contracts. "The fact of indebtedness can only be persuasive evidence, which may or may not lead to the conclusion that the paramount, controlling, ever-essential element of the offense—the intent to defraud—was pre-existent to the offense and caused the extension of the credit." The fact of the defendant's indebtedness was mere persuasive evidence of the intent. But the indebtedness, coupled with the circumstances under which it was created, and the fact that there had been neither compliance with the contract on which the money was paid, nor repayment of the money advanced, and that no good cause had been shown either why the work was not performed or the money repaid, by the terms of the statute, raised the presumption of an intent to defraud.

We will see, therefore, whether the presumption of fraudulent intent was satisfactorily rebutted by the defendant. He denied making the contract. Evidently the jury did not believe this, or they would have acquitted him. He did not deny procuring the money. The contract being established to the satisfaction of the jury, did he show any good reason for not performing his contract or repaying the money? This was the burden placed upon him by the presumption of fraudulent intent raised by the statute. As held in *Harwell* v. *State,* supra, unless there was good cause

for not repaying the money, it must be repaid on or before the day set for the commencement of the labor. The defendant tendered no evidence of repayment or of offer to repay, nor did he state that he had offered to repay the money. The same is true as to setting to work under the contract. When the day for the commencement of his labor under the contract arrived, he did not appear upon the scene. The defendant himself stated no good cause why he did not repay the money, nor why he did not begin the work. He merely denied the contract alleged in the accusation. Under the State's evidence a clear case of guilt was shown, and the jury had the right to give it the preference. The testimony of the witness Griffith, introduced in behalf of the defendant, was without value to the defendant. It did not support his contention that he had made no contract with Mr. Peden; because the witness did not claim to know anything on that subject. It did not present any good reason why he did not perform the contract or repay the money advanced by Peden. Testimony of Griffith as to the statement made to him by the defendant could well have been objected to, for the reason that it was the statement of a defendant in his own behalf anterior to the trial. But even as such a statement, it amounted to nothing in showing a good reason why the defendant did not repay money advanced upon the contract, if the jury believed a definite contract had been made, as testified by Peden. The statement made by the defendant to Mr. Griffith did not show even bona fide effort to obtain the money to repay Mr. Peden the money advanced on his contract. He did not tell him that Mr. Peden had advanced him a dollar on a contract of labor which he decided to repay. We do not think that an unsuccessful effort on the part of defendant to borrow money to repay money advanced on a labor contract would be good cause, according to the meaning of the second section of the act of 1903, for not repaying the money or performing the service according to the contract. But even if such an effort, accompanied by evidence of good prospects that the effort would be successful, can be urged as a defense, it ought to appear that the money is sought to be obtained upon truthful, and not upon false statements. We do not pretend to say that the defendant's statement to Mr. Griffith was untrue; it would be improper for us to express our opinion upon that subject. But if the jury believed

that the contract of labor was made as testified to by the State's witnesses, it is very apparent that the statement made by the defendant to Mr. Griffith was untrue and made merely to obtain money from him; and it appears that the defendant succeeded partially in this attempt.

As was ruled by us in *Patterson* v. *State,* supra: "The statute. of 1903 adds, to the catalogue of those acts heretofore made penal, two acts, the commission of either of which, if such act is induced by such antecedent fraudulent intent, causes the actor to be deemed a common cheat and swindler. It creates two new classes. It sets out two distinct offenses. In the one class is included any person who contracts to perform services of any kind with intent to procure money or other thing of value and does not intend to perform the service. If loss or damage results to the hirer, such person is, on conviction, to be punished as a common cheat and swindler. This is the distinct class of those who get the money on the faith of the contract but never set to work. The fraudulent intent antedates the contract. The second class is composed of those who, after making a contract, procure money or other thing of value with intent not to perform the service. This includes all those who, being already under contract, then conceive the fraudulent intent." This defendant belonged to the first class. and was so charged. From the evidence in behalf of the State, the law raised the presumption of fraudulent intent. The case for the State was perfect in every detail, unless the defendant could show good and sufficient cause why the money so advanced was. not returned on the day set for the commencement of the labor or the performance of the labor itself. The defendant failed to, carry the burden to the satisfaction of the jury.

*Judgment affirmed.*